FILED
AUG 10 2018
Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICARDO ORTIZ CRUZ,<br><br>Defendant. | CR 18–26–M–DLC<br><br>ORDER |

Defendant Ricardo Ortiz Cruz ("Cruz") has filed a Motion to Suppress evidence obtained from the search and seizure of his vehicle following a traffic stop that occurred in a rural area within two or three miles of the Canadian border. (Doc. 16.) Cruz is charged with being an illegal alien in possession of ammunition in violation of 18 U.S.C. § 922(g)(5)(A). Cruz argues that his search and seizure violated his Fourth and Fifth Amendment rights. On August 6, 2018, the Court held an evidentiary hearing on the motion and heard testimony from Border Patrol Officer Luis Granado ("Officer Granado"). Prior to the hearing, the Court reviewed all of the evidence filed by counsel. For the reasons explained below, the Court denies the motion.

## Background

On the evening of May 14, 2018, Officer Granado was patrolling the area around West Kootenai, Montana—a rural community on the Canadian border approximately forty miles from the Eureka Border Patrol station. Officer Granado had been assigned this area because his supervisor was aware of recent illegal crossings in the area. At approximately 2:30 a.m., Officer Granado was driving along West Kootenai Road, which he estimated was two miles from the border, when he observed a white minivan speeding towards him in his rear-view mirror. Officer Granado pulled over to let the vehicle pass and noticed that the vehicle had a temporary Texas license plate. Officer Granado did not activate his lights, but decided to follow the vehicle which resumed a normal speed. However, within a few moments, the vehicle turned off onto Whitetail Lane, a poorly maintained gravel road. The vehicle rapidly gained speed, causing the Officer to believe that the vehicle was attempting to evade him. Officer Granado followed, but the van sent up a cloud of dust reducing visibility and the Officer lost sight of the vehicle. Searching for some sign of headlights or taillights, Officer Granado soon emerged from the cloud of dust and realized that the vehicle must have pulled off somewhere behind him. He turned around and within a hundred yards he noticed the white van parked approximately fifty yards up an unmaintained forest service road with its lights turned off.

Officer Granado pulled in behind the van and activated his emergency lights. He approached the vehicle and asked the driver to roll down the window. Transitioning the conversation to Spanish, the driver responded that the window did not roll down. Officer Granado asked him to open the door and present his identification. The driver, Cruz, complied by opening the door and then reached for something to the right of the driver's seat and out of sight. Officer Granado was unable to see his hand and became afraid that Cruz was reaching for a gun.

At once, he pulled his service weapon on Cruz and ordered Cruz to show him his hands. When the Officer asked what he was reaching for, Cruz answered something to the effect that he was reaching for his wallet. Officer Granado told him that he better not be reaching for a gun. Cruz stated that he was not reaching for a gun but admitted that there was a gun in the back of the car. With Officer Granado's permission, Cruz then slowly reached for his wallet and presented three forms of Mexican-issued documents, including a driver's license and voting card. Approximately ten seconds after pulling out his firearm, the Officer holstered his weapon and inspected the documents. Cruz did not present any immigration paperwork, and when asked whether he was lawfully in the country, Cruz responded that he was not. Sometime during this encounter, Officer Granado confiscated the keys to the vehicle.

Officer Granado then radioed for backup. While waiting, he engaged Cruz

in conversation, asking him where he worked, where he was from, and how he had entered the country. Cruz answered honestly, and described having crossed the border near a bridge by fording a river. At the hearing, Officer Granado described that this conversation seemed to calm both of them down. As they talked, Officer Granado opened the back of the vehicle and searched for the gun that Cruz had indicated would be there. He found it in the jack compartment along with ammunition. He then secured the gun in his patrol car.

Shortly after, Agent Cantu arrived and read Cruz his *Miranda* rights before transporting Cruz to the Eureka Border Patrol station, leaving Officer Granado to secure the scene. He placed the gun back in the jack compartment, closed up the vehicle, and headed back to the station himself. The entire stop lasted approximately forty minutes.

This is where the waters become muddied. At approximately 4:00 a.m., Officer Granado arrived in Eureka with the end of his shift in sight. He spent the next hour or two documenting Cruz's biographical information and obtained his finger prints and photographs for his report. Instead of completing the report himself, Officer Granado described the circumstances surrounding the stop to Agent Brenda Lapage to author on his behalf. The following day, Officer Granado signed the report, but "did not read it word-for-word," and consequently the report contained significant inconsistencies and omissions.

-4-

Particularly, the May 14th report diverges from Officer Granado's subsequent account of the events at the point at which Officer Granado apprehended Cruz on the forest service road. His first report states that Officer Granado observed Cruz moving inside the vehicle and asked Cruz to put his hands outside the window, which is consistent with training protocols. The report contains no mention of Officer Granado having pulled his service weapon on Cruz and contains no indication that Officer Granado searched the vehicle or found the gun in the car at any time during the encounter. Instead, the report explains that Agent Cantu read Cruz his *Miranda* rights at the Border Patrol station at approximately 4:30 a.m. The report also indicates that the gun was found at the station only after Agent Salminen, a canine handler, conducted a "free air sniff" and the canine alerted to the back of the vehicle. (Doc. 17-1 at 3.) When asked about these discrepancies at the evidentiary hearing, Officer Granado explained that he did not tell anyone about having found the gun during an earlier search so that the weapon could be independently discovered during an inventory search.

Meanwhile, Special Agent Bradford Bybee with Homeland Security Investigations ("Agent Bybee") began investigating Cruz in order to bring criminal charges. On May 15th, he interviewed Cruz and wrote up a criminal complaint relying on the information contained in Officer Granado's May 14th report. On May 18th, he interviewed Officer Granado. Presumably during this interview,

Agent Bybee learned of some discrepancies between Officer Granado's stated version of events and the narrative contained in the report. The subsequent probable cause hearing in front of Magistrate Judge Jeremiah C. Lynch revealed other discrepancies causing Agent Bybee to interview Officer Granado yet again. Agent Bybee noted these discrepancies in his May 24th investigation report, in which he explained that the search was due to officer safety concerns. This assertion presents the third version of events surrounding the search.

Nevertheless, on June 1st, at Agent Bybee's behest, Officer Granado revised his report to clarify the circumstances surrounding the search. This final report is consistent with the May 14th report as it concerns Officer Granado's initial encounter and pursuit of the vehicle, and is consistent with his testimony at both the probable cause hearing and the hearing on the motion to suppress. This version of events explains that Officer Granado pulled a service weapon on Cruz after Cruz's hand disappeared towards the passenger side floor of the vehicle, early in the encounter. The report clarifies that Officer Granado searched the vehicle in the field to secure the gun.

Cruz moves to suppress the evidence of the gun and ammunition on the grounds that: (1) Office Granado's inconsistent testimony surrounding the initial stop of the vehicle dramatically undercuts his credibility to the point that the Court cannot objectively determine whether he had reasonable suspicion to *Terry* stop

Cruz's vehicle; (2) the encounter became custodial when Officer Granado pointed his service weapon at Cruz, therefore requiring a *Miranda* warning prior to any further questioning; and (3) that Officer Granado's warrantless search of Cruz's vehicle violates Cruz's Fourth Amendment rights and does not meet any search warrant exception. The Court will address each issue below.

## LEGAL STANDARD

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citing *Simmons v. United States*, 390 U.S. 377, 389–90 (1968)). The standard of review in a motion to suppress is by the preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974). However, warrantless searches are per se unreasonable, and where a defendant makes an initial showing that a search occurred without a warrant, the burden shifts to the government to show that a search warrant exception applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971); *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012) (stating "[t]he burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement is on the government.").

Here, Cruz has the initial burden to show that Officer Granado lacked reasonable suspicion for the *Terry* stop, that Cruz was in custody at the time

Officer Granado pulled out his service weapon, and the search of his vehicle occurred without a warrant. The burden then shifts to the Government to prove by a preponderance of the evidence that the search of Cruz's vehicle fell within a valid warrant exception.

DISCUSSION

I. **Reasonable Suspicion**

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). A brief investigatory stop, otherwise referred to as a *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1, 9 (1968), complies with the Fourth Amendment when an officer has reasonable suspicion to believe "that the person stopped is, or is about to be, engaged in criminal activity," *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). "Reasonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (internal quotation marks omitted). This determination is made under the totality of the circumstances, giving deference to the officer's experience and specialized training. *Arvizu*, 534 U.S. at 273–74; *see also Illinois v. Wardlow*, 528 U.S. 119,

125 (2000) ("reasonable suspicion must be based on common sense judgments and inferences about human behavior.") This determination is made objectively and requires more than an officer's mere hunch. *Arvizu*, 534 U.S. at 273–74.

In the context of a border zone, the Supreme Court has provided six factors that the Ninth Circuit considers in determining the existence of reasonable suspicion. *Montero-Camargo*, 208 F.3d at 1130 (citing to *United States v. Brignoni-Ponce*, 422 U.S. 873, 884–85 (1975)). These factors are:

> (1) the characteristics of the area in which they encounter a vehicle; (2) the vehicle's proximity to the border; (3) patterns of traffic on the particular road and information about previous illegal border crossings in the area; (4) whether a certain kind of car is frequently used to transport contraband or concealed aliens; (5) the driver's "erratic behavior or obvious attempts to evade officers;" and (6) a heavily loaded car or an unusual number of passengers.

*Id.* While these factors guide a court's determination, the Supreme Court prohibits a "divide-and-conquer" approach, and the Court is mindful of its duty to determine the evidence in light of the totality of the circumstances. *Arvizu*, 534 U.S. at 274. Reasonable suspicion is determined by looking at the facts which the officer had at the moment an individual is seized. *Brignoni-Ponce*, 422 U.S. at 881. Additionally, the Court has a separate obligation in a motion to suppress to determine the credibility of witnesses. *United States v. Vasquez*, 858 F.2d 1387, 1391 (9th Cir. 1988); *see United States v. Mejia*, 69 F.3d 309, 315 (9th Cir. 1995).

The threshold issue is whether Officer Granado's testimony at the

evidentiary hearing is credible, given the considerable omissions in his initial report.  Without undermining the significance of the error that occurred, the Court has determined that Officer Granado's testimony is credible.  Particularly, the Court observes that the May 14th and June 1st reports are substantially consistent through Officer Granado's initial approach of Cruz's vehicle.  This is significant, because Cruz was not seized until Officer Granado pulled behind Cruz on the forest service road and activated his emergency lights.  Therefore the Court's decision regarding reasonable suspicion does not require the Court to resolve any discrepancies amongst the reports.

Cruz argues, in essence, that the numerous inconsistencies, coupled with Cruz's explanation that these errors are the result of having signed, but not read, a statement attributable to him, renders Officer Granado's testimony so incredible that the Court should not believe it.  Additionally, Cruz points out that discovery yielded no reports of anyone other than Officer Granado to corroborate his current version of events—neither Agent Cantu nor Agent Salminen wrote a report, there was no dash-cam footage, nor audio recording of the stop.  Therefore, Cruz argues that there is no credible basis for the Court to determine the existence of reasonable suspicion.

The Court will not go this far.  While the Court frowns on the practice of signing a statement without reading it, Officer Granado did not attempt to conceal

the mistake and corrected it when asked. Given this, the Court accepts his statement that these mistakes are attributable to having allowed a third party to draft the report and having signed it in haste. The Court will therefore look to the June 1st report and Officer Granado's statements at the evidentiary hearing to determine whether he had reasonable suspicion to believe that the operator of the vehicle was evading border patrol as an illegal alien.

After a review of the *Brignoni-Ponce* factors, the Court determines that, under the totality of the circumstances, Officer Granado had reasonable suspicion. Factor one asks the Court to consider the characteristics of the area in which the officer encountered the vehicle. *Montero-Camargo*, 208 F.3d at 1130. This factor tilts towards finding reasonable suspicion because Officer Granado encountered Cruz in a remote area, parked fifty yards up an unmaintained forest service road, located off a "bumpy" gravel drive. The second factor also supports finding reasonable suspicion because Officer Granado encountered Cruz within roughly two miles of the Canadian border. Similarly, the third factor, which contemplates patterns of traffic on the particular road and information about previous illegal border crossings in the area, supports reasonable suspicion. *Id.* Officer Granado testified that he had been assigned the West Kootenai area to patrol by his supervisor because only a month prior a notorious fugitive was apprehended attempting to cross the border in the vicinity. Additionally, it is no

stretch of the imagination to consider that the traffic flow on various forest service or gravel roads at 2:30 a.m. along the Canadian border is infrequent. The fourth factor allows the Court to consider the physical appearance of the vehicle and what it communicates to an experienced officer. *Id.* While Officer Granado observed that the minivan itself caused no particular suspicion and described it as a "family van," his suspicion was piqued when he noticed that the van had temporary out-of-state license plates. Consequently, the Court finds that this factor is neutral. The fifth factor falls strongly in favor of the Government. Officer Granado testified that once Cruz turned off West Kootenai Road and headed up Whitetail Lane, he sped up causing a dust cloud in his wake. Officer Granado testified that, in his experience, this behavior is consistent with someone attempting to evade law enforcement. The final factor, whether the car is heavily loaded or contains an unusual number of passengers, is inapplicable here. *Id.*

Having considered these factors, the Court finds that the sum total of this evidence suggests that Officer Granado had reasonable suspicion to believe that Cruz was evading law enforcement because he was either an illegal alien or harboring one, when Officer Granado observed a vehicle with temporary out-of-state plates, at 2:30 a.m., within two miles of the Canadian border, pass a border patrol vehicle, abruptly turn onto a gravel road, increase his speed sending up a cloud of dust, and then attempt to conceal his vehicle by parking it fifty yards up

an unmaintained forest service road.

Accordingly, there was no constitutional violation here.

## II.   Custodial Determination

A *Miranda* warning is required when an individual is in custody and subject to interrogation. *Miranda v. Arizona*, 384 U.S. 436, 495–96 (1966); *United States v. Barnes*, 713 F.3d 1200, 1204 (9th Cir. 2013). Whether an individual is "in custody" requires a court to consider the fact-specific circumstances surrounding the encounter and whether a reasonable person would have felt free to leave. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *Smith v. Clark*, 804 F.3d 983, 992 (9th Cir. 2015). In the context of a *Terry* stop, the inquiry is whether a "reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." *Yarborough*, 541 U.S. at 662. This determination is objective. *Id.* (indicating that the objective standard does not "place upon the police the burden of anticipating the frailties or idiosyncrasies of every person whom they question."); *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981). And while an officer's safety concerns undoubtedly bare on the circumstances that create a potentially custodial situation, the officer's subjective state of mind is no more relevant than the defendant's subjective state of mind. *See Yarborough*, 541 U.S. at 663.

A few factors are pertinent to the custody determination: "(1) the language
-13-

used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Barnes*, 713 F.3d at 1204.

Looking to the factors above, the Court finds that only two are satisfied. Here, the circumstances indicating a potential custody are the physical surroundings—Officer Granado and Cruz were alone, in the dark, in a remote location—and the degree of pressure—the circumstances were fraught with pressure when Officer Granado brandished his service weapon. There is no evidence that Officer Granado used unduly strong language in his initial approach of Cruz, nor was Cruz confronted with evidence of his guilt. Though it is a close call, the Court finds that the factors supporting custody are significantly mitigated by the fact that Officer Granado immediately explained to Cruz why he had reached for his gun—out of fear that Cruz had reached for one himself—and that Officer Granado holstered his weapon within roughly ten seconds of pulling it out. The brief duration of the intensity of the encounter supports the determination that Cruz was not "in custody."

Further, given these circumstances, a reasonable and innocent person in Cruz's position would have known that he or she would be free to leave with proper documentation. Accordingly, the Court concludes that Cruz was not "in

custody" at the time that Officer Granado pulled out his service weapon, meaning that no *Miranda* violation occurred.

### III.  Search Warrant Exception

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. AMEND. IV.  To protect this right, a valid warrant requires that any "place to be searched, and the persons or things to be seized" to be described with particularity, supported by oath or affirmation attesting to probable cause.  *Id.*  A warrantless search is "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *Scott*, 705 F.3d at 416 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  Because Cruz met his burden to show that the search of his vehicle occurred without a warrant, the Government must prove that a warrant exception applies.

"Under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime."  *Id.* at 417.  Additionally, the vehicle must be "readily mobile."  *Id.* (stating "the applicability of the automobile exception does not turn on whether the car's owner or driver has already been taken into custody or the risk of mobility has otherwise been eliminated.")

Here, Officer Granado had probable cause to believe that there was a firearm in the back of the vehicle because Cruz told him there was. Further, the vehicle was readily mobile as evidenced by the fact that Officer Granado observed Cruz driving the vehicle only moments before the search.

Cruz contends that the automobile exception is not met because the circumstances were not exigent: Officer Granado had possession of the car keys and therefore Cruz could not drive away. However, the Ninth Circuit is clear that the automobile exception turns on the *inherent* exigency of a vehicle being readily mobile when there is probable cause to believe that evidence of a crime will be where an officer wants to look. *Scott*, 705 F.3d at 417; *see also California v. Carney*, 471 U.S. 386, 391 (1985). The factual impracticability of Cruz having no feasible means to drive without his keys is not determinative. Therefore, the Court concludes that the Government has met its burden to show that the automobile exception applies to this case and no Fourth Amendment violation occurred. Accordingly,

IT IS ORDERED that Defendant Cruz's Motion to Suppress (Doc. 16) is DENIED.

DATED this 10th day of August, 2018.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court